**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| DARRELL PALMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 08-CV-0213-MJR |
| | ) |
| THE AMERICAN COAL COMPANY, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

**I.     Background**

Darrell Palmer worked for The American Coal Company ("TACC") at the coal mine located in Saline County, near Galatia, Illinois. Palmer was injured on September 4, 2007, and again on October 4, 2007, in employment-related accidents. He filed worker's compensation claims against TACC on both of these injuries. On January 8, 2008, TACC fired Palmer. On February 4, 2008, Palmer filed suit in the Circuit Court of Saline County, Illinois, alleging retaliatory discharge for having exercised his rights under the Illinois Worker's Compensation Act. His complaint sought damages in excess of $50,000 but not to exceed $74,500, including court costs and attorney's fees.

Served with the complaint on February 19, 2008, TACC timely removed the action to this United States District Court on March 20, 2008, alleging subject matter jurisdiction under the federal diversity statute, **28 U.S.C. § 1332**. That statute requires that the amount in controversy exceed $75,000 (exclusive of interest and costs) and that "the citizenship of each plaintiff [be] diverse from the citizenship of each defendant." ***See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68**

1

**(1996);** *Howell v. Tribune Entertainment Co.*, **106 F.3d 215, 217 (7th Cir. 1997).** Palmer moved to remand the case to state court (Doc. 10), and TACC filed a memorandum opposing remand (Doc. 14).

TACC has adequately alleged that the parties are completely diverse (TACC is a citizen of Delaware and Ohio, and Palmer is an Illinois citizen). TACC need not furnish an affidavit to buttress these allegations, and Palmer does not contend that the parties are not diverse. Palmer does, however, contest the allegation that the jurisdictional amount in controversy has been satisfied.

The face of the plaintiff's complaint supplies the starting point in determining the amount in controversy. *Shaw v. Dow Brands, Inc.*, **994 F.2d 364, 366 (7th Cir. 1993).** Palmer's complaint prays for compensatory damages plus damages for emotional distress. He does not request a specific amount in damages but prays for judgment in an amount less than $75,000. Palmer appends to his complaint his affidavit, in which he states, "...in his opinion the damages in this case exceed $50,000.00 but do not exceed $74,500.00 (including court costs and interest)."

In TACC's memorandum opposing remand, it takes issue with Palmer's estimate of damages, his failure to promise not to execute a judgment in excess of that amount, and his refusal to promise not to amend his complaint to seek more than that amount.

## II. Discussion

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court a case filed in state court if there is original federal jurisdiction over the case. **28 U.S.C. § 1441(a);** *Chase v. Shop 'N Save Warehouse Foods, Inc.*, **110 F.3d 424, 427 (7th Cir. 1997)**. As explained by the Seventh Circuit, "Where jurisdiction is challenged as a factual matter, the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof, *NLFC, Inc.*

*v. Devcom Mid-America, Inc.*, 45 F.3d 231, 237 (7th Cir. 1995), which means proof to a reasonable probability that jurisdiction exists." ***Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1081 (7th Cir. 2001) (quoting *Target Market Pub., Inc. v. ADVO, Inc.*, 136 F.3d 1139, 1142 (7th Cir.1998)). *See also Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Chase,* 110 F.3d at 427**.

The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit was removed. ***Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510-11 (7th Cir. 2006) (citing *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir. 2002))**. A plaintiff's complaint, not a defendant's belief or the Court's surmise, guides the jurisdictional inquiry, and courts generally "deem a plaintiff's request for damages to have been made in good faith." ***Shaw*, 994 F.2d at 366. *See also In re Shell Oil*, 970 F.2d 355, 356 (7th Cir. 1992).** Once the defendant has established the required amount in controversy, the plaintiff can defeat jurisdiction "[o]nly if it is 'legally certain' that the recovery ... will be less than the jurisdictional floor." ***Oshana*, 472 F.3d at 511 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1939); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) ("the case stays in federal court unless it is legally certain that the controversy is worth less than the jurisdictional minimum.")**.

Thus, TACC, as the party seeking to invoke federal jurisdiction, bears the burden of demonstrating by a preponderance of the evidence that more than $75,000 was in issue at the time it filed its notice of removal on March 20, 2008.

TACC points to the open-ended prayer for relief which, although purporting to limit the damage request to $74,500, requests both compensatory damages and damages for emotional

3

distress. The amount in controversy is determined by evaluating the plaintiff's complaint "and the record as a whole." ***Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004), citing *Uhl v. Thoroughbred Tech. & Telecommunications, Inc.*, 309 F.3d 978, 983 (7th Cir. 2002); *Gould v. Artisoft Inc.*, 1 F.3d 544, 547 (7th Cir. 1993)**. Palmer did not describe the type of compensatory damages that he would seek, *i. e.,* lost back pay, front pay and/or benefits. Under Illinois law, a wrongfully discharged employee may recover lost back pay and front pay from his former employer for the period following the discharge until the employee either finds new employment or is reinstated. ***See Slane v. Mariah Boats, Inc.*, 164 F.3d 1065 (7th Cir. 1999) (applying Illinois law); *Reinneck v. Taco Bell Corp.*, 696 N.E.2d 839 (Ill.App.Ct. 1998)**. The employee can also recover for emotional distress suffered as a result of retaliatory discharge. ***Peeler v. Village of Kingston Mines*, 862 F.2d 135, 137 (7th Cir. 1988) (citing *Sloan v. Jasper City Community Unit School Dist. No. 1*, 522 N.E.2d 334 (Ill.App.Ct. 1988)); *Reinneck*, 686 N.E.2d at 845**. Moreover, Illinois law permits the employee to recover amounts beyond those pled in a complaint. ***BEM I,* 301 F.3d at 552**.

TACC contends that, in light of Palmer's actual annual wages for 2006 (the last complete year that he worked) of $72,000 and his eligibility for various benefits, including insurance and retirement benefits, an award that accounts for back pay, front pay, the value of lost benefits and punitive damages could exceed $75,000.[1] *See* Doc. 2, Exh. B, Riley Affidavit. According to TACC, statistics for Saline County Circuit Court indicate that it would be approximately 23 months from the date of filing until Palmer's claims would be tried. This Court notes that, for the twelve-month period ending September 30, 2007, the median time for a civil action in the United States District

---

[1] Palmer's prayer does not include punitive damages. *See* Doc. 2-2, Complaint, p. 4.

Court for the Southern District of Illinois, from filing to trial, was approximately 31 months. http://www.uscourts.gov/cgi-bin/cmsd2007.pl (Judicial Caseload Profile Report-2007). Considering the date of Palmer's alleged discriminatory termination, January 8, 2008, his annual income, the value of lost benefits, and the length of time for the conduct of this proceeding, the Court finds that a preponderance of the evidence supports a finding that more than $75,000 was in issue at the time TACC filed its notice of removal.

Additionally, TACC points out that Palmer failed and refused to execute a stipulation prior to removal that his damages were $75,000 or less. *See* Doc. 2, Exhs. C, D, E. The refusal to make such a stipulation is evidence that the amount in controversy exceeds the jurisdictional minimum. ***See Chase*, 110 F.3d at 428**. In *Oshana*, the Seventh Circuit explained that plaintiff's "refusal to admit that she would not seek individual damages in excess of $75,000 worked against her.... [I]f the plaintiff does not stipulate to damages of $75,000 or less, 'the inference arises that he thinks his claim may be worth more.'" ***Oshana*, 472 F.3d 512 (quoting *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000))**.

Thus, although a plaintiff can defeat federal diversity jurisdiction by providing a binding affidavit that he will not seek damages for more than $75,000 to prevent removal, ***Jones*, 541 F.2d at 664**, Palmer's affidavit does not have this effect. The affidavit appended to Palmer's complaint is not binding but is carefully couched in terms of expressing *his opinion*.

Nor does Palmer's counsel's post-removal affidavit (Doc. 11-2, dated April 12, 2008) divest the Court of jurisdiction. Postremoval events to reduce the amount in controversy do not negate the establishment of a jurisdictionally sufficient amount in controversy at the time of removal. ***St. Paul*, 303 U.S. at 289-90; *Meridian*, 441 F.3d at 538; *Rising-Moore v. Red Roof***

5

***Inns, Inc.*, 435 F.3d 813, 816 (7th Cir. 2006)**. Thus, even if the plaintiff makes an irrevocable promise after removal not to accept more than the jurisdictional minimum, or, as here, offers to accept $50,000 to settle the case, the Court would not be justified in remanding the case if federal jurisdiction existed at the time of removal. ***St. Paul*, 303 U.S. at 292-93; *Rising-Moore*, 435 F.3d at 816; *In re Shell Oil*, 970 F.2d at 356**. Applying the Seventh Circuit's analysis in ***Rising-Moore***, the Court concludes that Palmer's counsel's affidavit supports the conclusion that the amount in controversy exceeds $75,000. Therein, the Court explained that a willingness to accept a $60,000 settlement "implies that the stakes at trial comfortably exceed the minimum." ***Rising-Moore, ibid.*** "If Rising-Moore had a 50% likelihood of a $120,000 verdict at trial, he would offer to accept $60,000 with certainty, which has the same expected value...." *Id*. Palmer's willingness to accept $50,000 to settle this action *without risk* is evidence that he actually places a much higher value on his case.

Furthermore, Palmer's counsel's statement that he has filed more than 25 cases for retaliatory discharge in Illinois State Courts and that the highest settlement amount was $65,000, is irrelevant to the Court's review of the current proceeding. Even if the Court were to consider a postremoval affidavit, Palmer's counsel has provided no factual information showing how the value of those cases is in any way comparable to or bears on Palmer's action.

In sum, Palmer has not shown to a legal certainty that his damages could not amount to $75,000, and he has refused to stipulate that damages would not rise to this level. For these reasons, the Court finds that the preponderance of the evidence establishes that the amount in controversy exceeded $75,000 at the time of removal. The Court, therefore, concludes that it has jurisdiction over this case.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Palmer's motion to remand (Doc. 10).

**IT IS SO ORDERED.**

**DATED this 7th day of August, 2008**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**